FILED
2016 Aug-25  PM 01:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **LINE-X FRANCHISING, LLC, a California limited liability company, and LINE-X, LLC, a Delaware limited liability company,** | ) ) ) ) ) | |
| | ) | **CASE NO.** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **JURY TRIAL DEMANDED** |
| **RAMSEY CALNAN, an individual, KATIE CALNAN, an individual, and CALNAN ENTERPRISES, INC. d/b/a LINE-X OF SIMI VALLEY,** | ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## COMPLAINT

For its complaint against Ramsey Calnan ("Ramsey"), Katie Calnan ("Katie") and Calnan Enterprises, Inc., d/b/a LINE-X of Simi Valley ("Calnan Enterprises" and, together with Ramsey and Katie, "Defendants"), Plaintiffs LINE-X Franchising LLC ("LINE-X Franchising")  and LINE-X LLC ("LINE-X LLC" and, together with LINE-X Franchising, "Plaintiffs")  allege as follows:

## THE PARTIES

1.      LINE-X Franchising is a California limited liability company with its principal place of business at 1862 Sparkman Drive, NW, Huntsville, Alabama 35816.

9394343 v1

2.     LINE-X LLC is a Delaware limited liability company with its principal place of business at 1862 Sparkman Drive, Huntsville, Alabama 35816.

3.     On information and belief, Calnan Enterprises is a California corporation with a principal place of business at 1720 Voyager Avenue, Unit B, Simi Valley, California 93063.

4.     Ramsey is an individual who, on information and belief, resides at 1720 Voyager Avenue, Unit B, Simi Valley, California 93063.

5.     Katie is an individual who, on information and belief, resides at 1720 Voyager Avenue, Unit B, Simi Valley, California 93063.

6.     On information and belief, Calnan also directs, conducts, controls, or ratifies the actions of Calnan Enterprises, including, without limitation:   (a) directing, conducting, controlling, or ratifying unauthorized activities that infringe upon LINE-X's rights in certain **LINE-X®** registered trademarks, as set forth below; and (b) directing, conducting, controlling, or ratifying the unauthorized activities taking place through Defendants' <garrettcustomtrailers.com> website, as set forth below.

7.     Ramsey and Katie are joint registrants of the <garrettcustomtrailers.com> domain name, which resolves to a website that displays **LINE-X®** trademarks in violation of federal law and contract, as set forth below.

2

8.      On information and belief, Katie is also Ramsey's wife.

## JURISDICTION AND VENUE

9.      This is an action:  for breach of contract under Alabama law; for federal trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); for federal unfair competition under §43(a) of the Lanham Act (using a false designation of origin under 15 U.S.C. § 1125(a)(1)(A)); and for unfair competition under Alabama common law.

10.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338 and 28 U.S.C. § 1367.

11.      This Court has personal jurisdiction over Defendants because the governing agreement referred to in Paragraph 26 below that Calnan Enterprises and Ramsey entered into with LINE-X Franchising expressly provides that: "[E]xcept to the extent governed by the United States Trademark act and other federal laws . . . this Agreement and all other matters, including but not limited to respective rights and obligations, concerning you and us, will be governed by, and construed and enforced in accordance with, the laws of Alabama . . . You and we agree that this provision shall be enforced without regard to the laws of Alabama relating to conflicts of laws or choice of law."  The governing agreement referred to in Paragraph 26 below also provides that "any litigation will be brought in the

3

state or Federal court in whose jurisdiction our [i.e., LINE-X Franchising's] then-current headquarters is located."

12.    LINE-X Franchising alleges that its current headquarters is in Alabama and, therefore, that this Court (a) has personal jurisdiction over Defendants and (b) jurisdiction over this matter.

13.    Further, venue is proper in this judicial district under 28 U.S.C. § 1391(b).

## BACKGROUND

14.    LINE-X LLC and its predecessors have developed and own a system for the establishment and operation of businesses specializing in the application of LINE-X®-branded spray-on protective coatings (the "System").

15.    The distinguishing characteristics of the System include procedures and techniques for marketing and applying LINE-X brand spray-on truck bedliners and other coating services for light industrial uses, use of the LINE-X trademarks (the "LINE-X Marks"), the LINE-X Confidential Operations manual (the "Manual"), uniform operating methods, procedures and techniques, methods and techniques for recruiting, hiring and training employees, inventory, cost controls, record keeping and reporting, personnel management, purchasing, sales promotion, marketing and advertising, all of which may be changed, improved and further developed by LINE-X LLC (or LINE-X Franchising) from time to time.

16.    Among many other trademark registrations, LINE-X LLC is the owner of U.S. Trademark Registration No. 3,530,500 (the "LINE-X Registration") for **LINE-X®** for use in connection with "protective coatings for a wide variety of substrates" in International Class 002 and for use in connection with an "application of protective coatings" in International Class 040.   The LINE-X Registration validly issued to LINE-X LLC on November 11, 2008, and is based on a first use in interstate commerce on July 19, 1993.  A true and correct copy of the LINE-X Registration is attached as Exhibit A.  The **LINE-X®** trademark has been used for over 23 years in connection with protective coatings marketed by LINE-X LLC and is now incontestable under 15 U.S.C. §1065(b), i.e., it is conclusive evidence of LINE-X LLC's ownership of the trademark, the validity of the trademark and the registration, and of LINE-X LLC's *exclusive* right to use the trademark in commerce on or in connection with protective coatings and/or application of protective coatings under 15 U.S.C. § 1115(b).  A true and correct copy of the U.S. Patent and Trademark Office's record of the **LINE-X®** trademark showing its incontestable status is attached hereto as Exhibit B.

17.    Among many other trademark registrations, LINE-X LLC is the owner of U.S. Trademark Registration No. 3,666,009 (the "LINE-X Logo Registration") for **LINE-X®** for use in connection with "protective coatings for a wide variety of substrates" in International Class 002 and for use in connection

with an "application of protective coatings" in International Class 037. The LINE-X Logo Registration validly issued on August 11, 2009, and is based on a first use in interstate commerce on July 1, 2005. A true and correct copy of the LINE-X Logo Registration is attached as Exhibit C. This particular **LINE-X®** logo has been used for over 11 years in connection with protective coatings marketed by Plaintiffs and is now incontestable under 15 U.S.C. §1065(b), i.e., it is conclusive evidence of LINE-X LLC's ownership of the trademark, the validity of the trademark and the registration, and of LINE-X LLC's *exclusive* right to use the trademark in commerce on or in connection with protective coatings and/or application of protective coatings under 15 U.S.C. § 1115(b). A true and correct copy of the U.S. Patent and Trademark Office's record of the **LINE-X®** logo trademark showing its incontestable status is attached hereto as Exhibit D. (The LINE-X Logo Registration was assigned to LINE-X LLC by Line-X Acquisition LLC, an affiliated company.)

18.     For purposes herein, the term "LINE-X Franchised Business" will mean and include all of the components and characteristics of LINE-X LLC's business described above.

19.     Over the years, Plaintiffs have spent millions of dollars advertising and promoting protective coatings identified by the **LINE-X®** trademark.

20.    As  a direct result of the considerable time, effort, money, advertising and promotion of the **LINE-X®** trademark and its widespread and extensive use by Plaintiffs, the **LINE-X®** trademark has become widely and favorably known throughout the United States and throughout the world to millions of consumers. The **LINE-X®** trademark has come to serve as a unique identifier of the high quality protective coatings associated only with Plaintiffs.

21.    As a direct result of the considerable time, effort, money, advertising and promotion of the **LINE-X®** trademark and its widespread and extensive use as a result of sales of protective coatings thereunder, Plaintiffs enjoy a substantial amount of goodwill associated with the **LINE-X®** trademark.

22.    As an integral part of the LINE-X Franchised Business, Plaintiffs sell proprietary polyurethane and polyurea based products and other chemicals developed by LINE-X LLC which are the core ingredient of the LINE-X brand coatings that consumers apply (the "Products").

23.    Plaintiffs' training, equipment, and the System are designed around Plaintiffs' proprietary Products.

24.    LINE-X Franchising licenses the rights to the System, the Products, the LINE-X Marks, and the LINE-X Franchised Business from LINE-X LLC and, in turn, LINE-X Franchising has the right to license parts or all of the System to others, including to Defendants.

25.    LINE-X Franchising also licenses the rights to certain LINE-X Marks from LINE-X LLC.

26.     Defendant Calnan Enterprises executed a franchise agreement with LINE-X Franchising for the LINE-X Franchised Business, and that agreement was dated March 4, 2013 (the "LINE-X Franchise Agreement").

27.    Pursuant to the LINE-X Franchise Agreement, and while it was in force, Calnan Enterprises had the limited right to conduct a LINE-X Franchised Business within the following zip codes:  91303, 91304, 91305, 91306, 91307, 91308, 91309, 91324, 91328, 91393, 91396, 93020, 93021, 93062, 93063, 93064, 93065, 93094, and 93099 (collectively, the "Territory").

28.    Defendant Ramsey executed the LINE-X Franchise Agreement both on behalf of Calnan Enterprises and in his personal capacity as Guarantor.

29.    Defendant Calnan Enterprises materially breached the LINE-X Franchise Agreement in numerous ways.

30.    Defendants Calnan Enterprises and Ramsey received at least three serious customer complaints within a short period of time, which constituted a breach of the LINE-X Franchise Agreement.

31.    LINE-X Franchising subsequently delivered a formal notice of default to Calnan Enterprises for (a) failing to purchase the required minimum amounts of the Products, (b) failing to meet service standards by not attending any LINE-X

conferences, and (c) receiving three customer complaints.  All of the foregoing constitute violations of the LINE-X Franchise Agreement.

32.     Calnan Enterprises was put on probation for violating the LINE-X Franchise Agreement.  Ramsey was given an opportunity to attend additional training while Calnan Enterprises was on probation, but Ramsey declined the offer to attend additional training.

33.     Defendant Calnan Enterprises did not cure any of the defaults.

34.     LINE-X Franchising terminated the LINE-X Franchise Agreement on July 6, 2015 for cause.

35.     Through counsel, Calnan Enterprises and Ramsey disputed the termination, even going so far as to invoke the first stage (a face-to-face meeting) of the dispute resolution mechanism outlined in the LINE-X Franchise Agreement.

36.     LINE-X Franchising refused to rescind the termination and subsequently resold the Territory to another franchisee.

37.     On information and belief, Ramsey is now a representative of Plaintiffs' competitor, Rhino Linings.

38.     LINE-X Franchising subsequently sold the Territory to another franchisee who operates under the name "LINE-X of Simi Valley."

39.     LINE-X Franchising's new franchisee has been denied an SBA loan by Wells Fargo due to the ongoing existence of Calnan Enterprises' identical fictitious business name:  LINE-X of Simi Valley.

40.     The City of Simi Valley is in Ventura County, California, on the border of Los Angeles County.

41.     Calnan Enterprises is located in Ventura County, and the name "LINE-X of Simi Valley" is registered with Ventura County.

42.     Calnan Enterprises has not cancelled the "LINE-X of Simi Valley" fictitious business name.

43.     Calnan Enterprises has refused all requests to cancel the "LINE-X of Simi Valley" fictitious business name.

44.     Calnan Enterprises' refusal to cancel the "LINE-X of Simi Valley" fictitious business name is damaging Plaintiffs' new franchisee in the City of Simi Valley.

45.     On information and belief, Calnan Enterprises (through Ramsey) now represents Rhino Linings, which is a competitor of Plaintiffs.

46.     Although Calnan Enterprises now represents Plaintiffs' competitor (Rhino Linings), Calnan Enterprises and Ramsey brazenly use the LINE-X Marks on websites and in other ways, in clear violation of the LINE-X Franchise Agreement and federal intellectual property and Alabama law.

47.    A true and correct copy of pages from websites controlled by Calnan Enterprises are attached at Exhibit E.

48.    One such website exhibiting infringing content is accessible through <garrettcustomtrailers.com>.  This website is controlled by Defendants Ramsey and Katie.  A true and correct copy of the WHOIS data sheet evidencing that <garrettcustomtrailers.com> is registered to both Ramsey and Katie Calnan is attached at Exhibit F.

49.    On information and belief, Ramsey and Katie also control the <linexofsimivalley.com> domain name.

50.    Additionally, Defendants continue to use a variety of **LINE-X®**-related e-mails such as linexofsimivalley@gmail.com.

51.    The LINE-X Franchise Agreement provides for mediation or arbitration of all disputes except for "claims or disputes relating primarily to the validity of the Marks and/or any Intellectual Property licensed to [the franchisee]."

52.    The LINE-X Franchise Agreement further states that "any litigation will be brought in the state or Federal court in whose jurisdiction our then current headquarters is located."  This forum is the most appropriate forum in which all of Plaintiffs' claims can be heard.

53.    Both Ramsey and Calnan Enterprises have refused all reasonable requests to cancel the "LINE-X of Simi Valley" fictitious name.

54.     Defendants have refused all reasonable requests to cease using the LINE-X Marks.

55.     Defendants' above-described actions have been malicious and purposeful, and have been designed with the intent to financially hurt Plaintiffs and disrupt their business, and they have had that effect.

56.     Defendants above-described actions are also damaging the prospects of Plaintiffs' new franchisee in Simi Valley.

## COUNT I

### Breach of Contract (against Calnan Enterprises)

57.     Plaintiffs incorporate by reference all of the facts and allegations stated in Paragraphs 1 through 56 of this Complaint as if fully rewritten herein.

58.     The LINE-X Franchise Agreement between LINE-X Franchising and Calnan Enterprises is a valid and enforceable contract.  The provisions contained in the LINE-X Franchise Agreement relate to the use of the valuable **LINE-X®** trademarks and are reasonably necessary to protect Plaintiffs' legitimate protectable interests and the public at large.

59.     LINE-X Franchising has fully performed all of its obligations under the LINE-X Franchise Agreement.

60.     The LINE-X Franchise Agreement provides that Calnan Enterprises should have promptly cancelled the "LINE-X of Simi Valley" fictitious name and

ceased using all LINE-X Marks, including, without limitation, removing all **LINE-X®** trademarks (word marks and logos) from website(s) upon the termination of the affiliate relationship.  Calnan Enterprises continues to breach provisions of the LINE-X Franchise Agreement by refusing to cancel the "LINE-X of Simi Valley" fictitious name and cease all uses of LINE-X Marks.

61.     As a direct and proximate result of these breaches by Calnan Enterprises, Plaintiffs are, have been, and will continue to be damaged, through the loss of customers, competitive advantage, and goodwill.  In addition, as a direct and proximate result of the breaches by Calnan Enterprises and the activities of all Defendants, the public has been, and will continue to be deceived.

62.     As a direct and proximate result of the wrongful conduct by Calnan Enterprises and all Defendants, Plaintiffs have suffered and continue to suffer irreparable injury.

63.     As a direct and proximate result of the wrongful conduct by Calnan Enterprises and all Defendants, Plaintiffs have suffered and continue to suffer substantial monetary damages.

## COUNT II

### Federal Trademark Infringement (against all Defendants)

64.     Plaintiffs incorporate by reference all of the facts and allegations stated in Paragraphs 1 through 63 of this Complaint as if fully rewritten herein.

65.     Defendants' use of the Marks, including the **LINE-X®** trademark covered by the LINE-X Registration, in interstate commerce in connection with marketing, offering for sale, and selling protective coatings as detailed in the above Paragraphs of this Complaint, including, without limitation, or incorporated in the "LINE-X of Simi Valley" fictitious name, on Defendants' website, and in connection with displaying LINE-X logos, constitutes infringement of the **LINE-X®** trademark, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

66.     On information and belief, Defendants' acts of infringement are and have been deliberate, intentional and willful and have been committed with full knowledge of LINE-X's rights in the **LINE-X®** trademark for protective coatings.

67.     Defendants' unauthorized use of the LINE-X Marks have caused Plaintiffs substantial and irreparable injury by depriving LINE-X LLC of its right to determine the manner in which the **LINE-X®** trademark is represented to the general public through merchandising and marketing.

68.     Plaintiffs have been and will continue to be injured as a result of the foregoing acts, either by direct diversion of business from Plaintiffs' genuine **LINE-X®**-branded products or by lessening of the goodwill that the **LINE-X®** trademark enjoys with the buying public, including without limitation consumers and franchisees.

69. Defendants, by their aforesaid acts, have damaged Plaintiffs and unlawfully derived profits and gains.

70. By reason of the aforesaid unlawful acts of infringement, Defendants have caused and will continue to cause substantial and irreparable harm to Plaintiffs and to the public, for which there is no adequate remedy at law. Defendants have unjustifiably benefited from said unlawful acts and will continue to carry out such unlawful conduct and be unjustly enriched unless enjoined by this Court.

## COUNT III

### Federal Unfair Competition (against all Defendants)

71. Plaintiffs incorporate by reference all of the facts and allegations stated in Paragraphs 1 through 70 of this Complaint as if fully rewritten herein.

72. Defendants' descriptions, literal representations, and graphic representations on their website communicating that their business is affiliated with Plaintiffs (including the use of a logo confusingly similar to the LINE-X logo covered by the LINE-X Logo Registration and the use of the "LINE-X of Simi Valley" fictitious name, as well as the illicit use of other **LINE-X®** indicia as set forth above), are false designations of origin or false or misleading descriptions or representations of fact likely to cause confusion, or to cause mistake, or to deceive (a) as to the affiliation, connection, or association of Plaintiffs with Defendants, or

15

(b) as to the origin, sponsorship, or approval of Defendants' goods and business practices by Plaintiffs, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. 1125(a)(1)(A).

73.    On information and belief, Defendants' false designations of origin have been willful and either have deceived, or are likely to deceive, a substantial portion of the intended audience for Plaintiffs' products.

74.    Defendants' false designations of origin and false or misleading descriptions of fact are likely to influence purchasing decisions.

75.    Plaintiffs have been and will continue to be injured as a result of the foregoing acts by declining sales for genuine **LINE-X®** products and, most importantly, a lessening of the goodwill that the **LINE-X®** brand has with the buying public.

76.    Defendants, by their aforesaid acts, have damaged Plaintiffs and unlawfully derived profits and gains therefrom.

77.    By reason of the aforesaid unlawful false or misleading statements, Defendants have caused and will continue to cause substantial and irreparable harm to Plaintiffs and to the public for which there is no adequate remedy at law. Defendants have unjustifiably benefited from said unlawful acts and will continue to carry out such unlawful conduct and be unjustly enriched unless enjoined by this Court.

## COUNT IV

### Unfair Competition Under Alabama Common Law (against all Defendants)

78.    Plaintiffs incorporate by reference all of the facts and allegations stated in Paragraphs 1 through 77 of this Complaint as if fully rewritten herein.

79.    The aforesaid conduct of Defendants constitutes unfair competition under the common law of the State of Alabama.

80.    On information and belief, Defendants' acts of unfair competition have been willful.

81.    Plaintiffs have been injured as a result of the foregoing acts by causing Plaintiffs to lose sales or by lessening of the goodwill that Plaintiffs' products enjoy with the buying public.

82.    As a result of Defendants' acts of unfair competition, Defendants have caused and will continue to cause substantial and irreparable harm to Plaintiffs and to the public for which there is no adequate remedy at law.  Defendants have unjustifiably benefited from said unlawful acts and will continue to carry out such unlawful conduct and be unjustly enriched unless enjoined by this Court.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court enter judgment in its favor as follows:

(A)    That Calnan Enterprises be adjudged to have breached the LINE-X Franchise Agreement;

17

(B)    That Defendants be adjudged to have infringed LINE-X LLC's federal trademark rights in **LINE-X®** conveyed by U.S. Trademark Registration No. 3,530,500, in violation of Lanham Act § 32(1), 15 U.S.C. § 1114(1);

(C)    That Defendants be adjudged to have willfully infringed the **LINE-X®** trademark, with full knowledge of LINE-X LLC's prior use of and rights in the **LINE-X®** trademark;

(D)    That Defendants be adjudged to have used a false designation of origin, in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a)(1)(A);

(E)    That Defendants be adjudged to have engaged in unfair competition under Alabama law;

(F)    That Calnan Enterprises be required to account for all damages suffered by Plaintiffs as a result of Calnan Enterprises' breaches of the LINE-X Franchise Agreement;

(G)    That LINE-X Franchising be adjudged to have performed its duties under the LINE-X Franchise Agreement and that Calnan Enterprises be ordered to specifically perform its duties and obligations under the LINE-X Franchise Agreement;

(H)    That, pursuant to 15 U.S.C. §1116, the Court preliminary and permanently enjoin Defendants, their agents, employees, attorneys and all persons in active concert or participation with them, from directly or indirectly using the **LINE-X®** trademark or any other mark, trade name, word or name similar to the **LINE-X®** trademark that is likely to cause confusion, mistake, or to deceive, including, without limitation, in an Internet domain name, in metatags, in Internet keywords, in a fictitious name, in an e-mail address, and/or by distributing, selling, offering for sale, and/or advertising any goods or services bearing the names, logos or trademarks of Plaintiffs, including, without limitation, any **LINE-X®** trademark (including covered by the LINE-X Registration and/or covered by the LINE-X Logo Registration) or any confusingly similar variation thereof (specifically Plaintiffs pray that the Court order Defendants to cancel the "LINE-X of Simi Valley" fictitious business name);

(I)      That Defendants be required, pursuant to 15 U.S.C. §1117(a), to pay LINE-X LLC the actual damages it has suffered as a result of Defendants' trademark infringement, trademark dilution, and deceptive practices, and disgorge any profits therefrom, and that Defendants be required, pursuant to 15 U.S.C. § 1117(b), to pay LINE-X LLC three times the amount of actual damages or profits suffered by them by virtue of the willful nature of Defendants' illegal acts;

(J)      That, pursuant to 15 U.S.C. § 1117(a), the Court declare this an exceptional case and award LINE-X LLC its reasonable attorneys' fees;

(K)      That  the Court award Plaintiffs taxable costs of this action and pre-judgment interest; and

(L)      That the Court grant such other and further relief as is just and proper.

Dated: August 25, 2016.

Respectfully submitted,

BURR & FORMAN, LLP

*s/ Ellen T. Mathews*
Ellen T. Mathews (MAT057)
420 20th Street N, Suite 3400
Birmingham, Alabama 35203
Tel: (205) 458-5410
Fax: (205) 714-6897
emathews@burr.com

BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP

*s/ Mark E. Avsec*
Mark E. Avsec (Ohio Bar. No. 0064472)
200 Public Square, Suite 2300
Cleveland OH  44114-2378
Tel: (216) 363-4500

Fax: (216) 363-4588
mavsec@beneschlaw.com

Attorneys for PLAINTIFFS
LINE-X Franchising and LINE-X LLC

## JURY DEMAND

Plaintiffs LINE-X Franchising LLC and LINE-X LLC demand a jury trial

pursuant to Fed. R. Civ. P. 38 as to all issues so triable in this action.


*s/ Ellen T. Mathews*
Attorneys for PLAINTIFFS LINE-X
FRANCHISING, LLC AND LINE-X LLC